# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3606-17T3
A-3608-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JAHCIR KING,

     Defendant-Appellant.

_____

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MICHAEL KEE,

     Defendant-Appellant.

_____

     Argued September 20, 2018 – Decided October 9, 2018

     Before Judges Alvarez and Nugent.

     On appeal from Superior Court of New Jersey, Law Division, Camden County, Indictment No. 17-11-3227.

Megan J. Davies argued the cause for appellant Jahcir King.

Raquel DeStefano, Assistant Deputy Public Defender, argued the cause for appellant Michael Kee (Joseph E. Krakora, Public Defender, attorney; Raquel DeStefano and Jennifer N. Sellitti, Assistant Deputy Public Defender, on the brief).

Joseph J. MacNamara, Assistant Prosecutor, argued the cause for respondent (Mary Eva Colalillo, Camden Country Prosecutor, attorney; Joseph J. MacNamara, of counsel and on the brief).

PER CURIAM

On leave granted, codefendants, Jahcir King and Michael Kee, appeal from an order that denied their motions for severance of their trials. King also appeals from an order that denied his motion to dismiss the indictment. The motion record contains no evidence defendants participated in the same act or same series of acts constituting a crime. The transcript of the grand jury presentment contains no evidence of any deficiency in that proceeding. Accordingly, we reverse the order denying severance but affirm the order denying King's motion to dismiss the indictment.

In a single indictment containing ten counts against Kee and one count against King, a Camden County grand jury charged Kee with first-degree murder, two weapons offenses, hindering apprehension, and six counts of

witness tampering. The State later dismissed five counts of witness tampering. The indictment's eleventh count — the only count against King — charged him with witness tampering.

According to the indictment, Kee committed the murder, possessed a weapon, a handgun, hindered his apprehension, and threatened a witness on March 1, 2017. The indictment alleged King tampered with a witness on October 19, 2017, more than seven months after Kee committed the murder.

These are the State's factual allegations. On March 1, 2017, Kee, driving a car occupied by two other men and a woman, parked on a Camden Street. Kee and one of the men exited the car, walked around a corner, and walked up to the driver's side window of a parked car occupied by three men. Carlos Rosa was sitting in the driver's seat. Kee and Rosa spoke and then argued. Kee drew a handgun and shot Rosa, killing him.

Kee and the man with him fled the scene and ran back to their car. Kee gave the female passenger (the witness) the handgun and said he would kill her if she told anyone. After Kee sped away, an officer in a nearby patrol car saw him speeding, pursued him, and pulled him over. Other officers arrived and transported Kee and his car's occupants to the police department. The witness, who had concealed the handgun on her person, stuffed it behind the rear seat of

3

the patrol car in which she rode to the police station.  Police discovered the handgun the next day.  Ballistics tests established that it was the murder weapon.

The witness and the man who accompanied Kee when he shot Rosa eventually gave statements implicating Kee.  Kee was arrested for the homicide. During the months following his arrest, he made numerous calls from jail — all recorded — to the witness.  The five witness tampering counts of the indictment the State eventually dismissed were based on the content of Kee's telephone calls to the witness from the jail.

The witness tampering charge against King is based on a Facebook post. King had received a subpoena the State issued to the witness.   The Facebook post contained a copy of the subpoena.  This appeared above the subpoena on the post:

> "Man f*** this ik [(I know)] it's early n all but frankly IDGF [(I don't give a f***)] this rat ass bitch got my cousin bagged all like that's ya best friend SMD [(suck my d***)] who got a problem bout it's w.e [(whatever)] I ain't hiding [(three emoji 100 signs)] n u keep lying saying u didn't but here's the proof [(emoji 100)]. [Witness's first name] the f***in Rat YA DONE!!!! Free Oosoo Milk Nificent and Mikey #FTR (F*** The Rats) #FTL [(F*** The Liars) (seven middle finger emojis)]."

Following King's arrest, he gave a statement to Camden County detectives.  He admitted making the Facebook post but denied it was a threat.

4

He explained that "Ossoo Mile Nificent" was his cousin and "Mikey" was defendant Kee, a distant relative of his stepsister. He said a "picture" of the subpoena was sent to him but he did not know who sent it. He claimed that he intended nothing by the post, he was simply voicing his opinion about the witness being a hypocrite. He also claimed that when he wrote "YOU DONE," he meant he wanted nothing more to do with her, no more phone calls or communication. He did admit having a conversation with Kee after Kee's arrest.

Following the indictment, King filed motions to dismiss the indictment and to sever his case for trial, both of which were denied. Kee filed a severance motion, which was also denied. In an oral decision delivered from the bench, the Law Division judge denied King's motion to dismiss the indictment. The judge rejected King's argument that his Facebook post was protected free speech, that the State was obligated to present his statement to the grand jury, and that the post's content did not constitute a threat. The judge determined that given the context of the post and the charges against Kee, a reasonable jury could infer the post was a threat to the witness.

The judge also denied both severance motions. The judge did not find that trying the defendants together would result in "undue legal prejudice." Rather, the judge determined that appropriate jury instructions would solve any

5

concerns about the jury inappropriately considering the acts of one codefendant against the other. As to Rule 3:7-7 — the rule that authorizes joinder of defendants — the judge found that the rule's requirement defendants must be "alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses" was satisfied by "a commonality . . . with regard to [the witness]."

Amplifying his reasons in a written opinion, the judge found "codefendants participated in a series of interrelated events in the case." The judge stated, "[i]n direct response to [the witness] agreeing to testify in Michael Kee's trial, Jahcir King posted a photo of [the witness's] subpoena on Facebook and included serious threatening language." Acknowledging the State had not yet alleged any direct evidence that King was involved in the homicide, the judge nonetheless said he "understood the alleged actions of the codefendants as a series of interrelated events stemming from the underlying murder." The judge also "recognize[d] that a convincing argument can be made of the existence of circumstantial evidence linking these two defendants with the intent to threaten [the witness]." He did not articulate precisely what such argument was, nor did he cite the facts from which such a circumstantial case could be made.

A-3606-17T3

Citing Rule 3:15-2 — the rule that affords relief from prejudicial joinder — the judge found neither defendant had made a persuasive argument that a joint trial would cause undue prejudice. The judge reiterated that proper jury instructions would prevent any undue prejudice to either defendant.

Codefendant King argues the following points on appeal:[1]

> [I].    THE    TRIAL    JUDGE    COMMITTED REVERSIBLE ERROR BY ALLOWING THE PROSECUTION TO UTALIZE [sic] THE GRAND JURY AS A RUBBER STAMP, CAUSING IRREVOCABLE HARM TO THE DEFENDANT.
>
> [II].    THE    TRIAL    JUDGE    COMMITTED REVERSIBLE ERROR BY ALLOWING THE PROSECUTION TO JOIN TWO DEFENDANTS IN COMPLETE OPPOSITION TO THE LAW AND COURT    RULES    THEREBY    CAUSING SUBSTANTIAL    PREJUDICE    TO    BOTH DEFENDANTS AND A SIGNIFICANT DELAY IN DEFENDANT KING'S TRIAL.

Codefendant Kee argues:

> [I].    THE TRIAL COURT'S REFUSAL TO SEVER DEFENDANTS CONSTITUTED ERROR AS A MATTER OF LAW.
>
> > A. The trial court erroneously sustained joinder because there is no evidence an overarching, common scheme or plan of both defendants.

---

[1]  We have renumbered the point headings and deleted those concerning why codefendants' motions for leave to file interlocutory appeals should be granted.

> B. The trial court's refusal to grant Mr. Kee's severance motion will substantially prejudice his defense.

The State argues that the motion judge correctly denied all codefendants' motions. As to King's indictment, the State denies it had a duty to present King's statement to the grand jury and denies it violated King's right to free speech. The State contends the evidence presented to the grand jury clearly established a prima facie case of witness tampering. As to the severance motions, the State argues the motion judge properly found both that codefendants engaged in interrelated offenses and that any potential prejudice to codefendants could be ameliorated by proper jury instructions.

Codefendant King's first argument concerning the grand jury and the indictment is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). The codefendants' arguments concerning severance are meritorious.

The source rule for Rule 3:7-7 is R.R. 3:4-8, which provides in pertinent part:

> Two or more defendants may be charged in the same indictment or accusation if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or

more counts together or separately, and all of the defendants need not be charged in each count. The disposition of the indictment or accusation as to one of several defendants joined in the same indictment or accusation shall not affect the right of the State to proceed against the other defendants.

The current rule, Rule 3:7-7, provides:

> Two or more defendants may be charged in the same indictment or accusation if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count. The disposition of the indictment or accusation as to one or more of several defendants joined in the same indictment or accusation shall not affect the right of the State to proceed against the other defendants. Relief from prejudicial joinder shall be afforded as provided by R. 3:15-2.

Rule 3:15-2(b) provides in pertinent part that "[i]f for any other reason it appears that a defendant or the State is prejudiced by a permissible or mandatory joinder of . . . defendants . . . the court may . . . grant a severance of defendants, or direct other appropriate relief."

Interpreting R.R. 3:4-8, and specifically addressing the issue of whether to join defendants requires the State to allege in the indictment that they participated in the same act or transaction or in the same series of acts or transactions, the Court explained:

9

The constitutional guarantee of indictment is not involved. The constitutional right is honored if the indictment charges the essential elements of the crime; it has nothing to do with joinder of offenders, a matter of trial practice. It seems to us that R.R. 3:4-8 was intended to mean only that the required showing be made in some acceptable form. The identity of the acts or transactions may appear from a comparison of the charges and participation may be inferred therefrom, or the State may advance its contention that defendants participated in the same acts or transactions by a showing independent of the indictments themselves. Upon either approach, the trial court's action was proper.

[State v. Manney, 26 N.J. 362, 367–68 (1958).]

In the case before us, the State did not allege in the indictment either that King participated in the homicide or that Kee participated in King's Facebook post. In fact, during argument on the severance motions, the assistant prosecutor stated explicitly the State was not claiming Kee participated in the Facebook threat by King: "we have not charged conspiracy in this case, we are not alleging that Michael Kee put Jahcir King up to it, we're not saying that Jahcir King contacted Michael Kee and said this was what I was going to do." Rather, the assistant prosecutor alleged "there is a connection between the transactions. That connection would be that Michael Kee is charged with the murder. [The witness] is a witness in that murder. Jahcir King tampered with

[the witness] in reference to her participation as a witness in the murder charges against Michael Kee.  That is the connection."

Rule 3:7-7, which permits the State to charge two or more defendants in the same indictment, requires that the defendants "are alleged to have participated in the same act or transaction" (emphasis added).  Stated differently, the clear and unambiguous language of the rule requires more than a mere connection.  Here, the State not only presented no evidence of joint participation by either codefendant in the offense charged against the other, but also admitted there was no such evidence.  Rather, it submitted a "connection" between the crimes sufficed.  A mere connection being insufficient, defendants were improperly joined in the indictment.  Because they were improperly joined in violation of Rule 3:7-7, we need not reach the issue of whether defendants demonstrated prejudice under Rule 3:15-2(b).

We recognize "[t]he decision whether to grant severance rests within the trial court's sound discretion and is entitled to great deference on appeal."  State v. Brown, 118 N.J. 595, 603 (1990) (citing State v. Laws, 50 N.J. 159, 175 (1967)).  Here, by making a determination unsupported by the evidence, contrary to the assistant prosecutor's explicit representation that he was not asserting either codefendant participated in the offense charged against the

other, and contrary to the rule requiring such joint participation as a prerequisite to joinder of defendants, the court abused its discretion.

The order denying severance of the codefendants' trials is reversed. The matter is remanded for separate trials. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3606-17T3